## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JOHN MAYHALL and CHRISTY MAYHALL** ) ) ) | |
| Plaintiffs, ) ) | **Civil Action No.**_____ |
| v. ) ) ) | |
| **COUNTRYWIDE HOME LOANS, INC,** ) **COMPANY, INC., a corporation;** ) **CRANE TITLE, INC., a corporation;** ) **WHITEHAVEN INSURANCE GROUP,** ) **INC., a corporation; FIRST AMERICAN** ) **BANK;** ) ) ) ) | |
| Defendants. ) | |

## COMPLAINT

## PARTIES

1.     Plaintiff **JOHN MAYHALL** is an individual over the age of nineteen (19) years and resides in Shelby County, Alabama.

2.     Plaintiff **CHRISTY MAYHALL** is an individual over the age of nineteen (19) years and resides in Shelby County, Alabama.

3.     Defendant **COUNTRYWIDE HOME LOANS, INC.** (hereinafter referred to as "Countrywide") is a Foreign Corporation qualified to do business in Alabama.

4.     Defendant **CRANE TITLE, INC.** (hereinafter referred to as "Crane") is an Alabama corporation.

5.     Defendant **WHITEHAVEN INSURANCE GROUP, INC.** (hereinafter referred to as "Whitehaven") is an Alabama corporation.

**6.**     Defendant **FIRST AMERICAN BANK** (hereinafter referred to as "First American") is, upon information and belief, an Alabama banking corporation with its priniviple place of business in Jefferson County, Alabama.

## JURISDICTION & VENUE

**7.**     This court has subject matter jurisdiction over the issues herein pursuant to 12 U.S.C. §2605, $2609, The Real Estate Settlement Procedures Act.

**8.**     This Court has personal jurisdiction over the Plaintiffs as residents of Shelby County, Alabama.

**9.**     This Court has personal jurisdiction over defendants Crane, First American and Whitehaven as Alabama corporations.

**10.**    This Court has personal jurisdiction over Countrywide through Alabama's Long Arm Statute since Countrywide conducts regular and systemic business activities throughout Alabama.

**11.**    Venue is proper in this Court since the Plaintiffs reside in Shelby County and one of the defendants principle place of business is located in Jefferson County, Alabama.

**12.**    This court has pendent jurisdiction over the state law claims contained herein.

## FACTUAL ALLEGATIONS

**13.**    Plaintiffs' Primary residence is located at 2734 Highway 331, Columbiana, Alabama 35051 (hereinafter referred to as the "primary residence").  Plaintiffs receive all notifications and transact all business related to the subject matter of this lawsuit

**14.**    On or about May 15, 2007, Plaintiffs purchased a residential property located at 27176 White Marlin Drive, Orange Beach, Alabama 36561; Unit G-10 of Walker Key Condominiums (hereinafter referred to as the "beach property").

**15.**    The mortgage loan for the beach property was brokered by First American Bank and at closing on May 15, 2007, was either simultaneously assigned to; and/or table funded by Countrywide.  The loan is assigned Countrywide loan number 160343263.

**16.** Plaintiffs received a final Truth in Lending Disclosure Statement at closing. The document reports that the monthly payment on the loan for the first 36-months will be $2,393.47. *(see TIL attached hereto at Exhibit "7")*

**17.** Plaintiffs also received a "Note" at closing which reports the starting monthly payments to be $2,091.56. *(See Note attached hereto at Exhibit "8")*

**18.** The Hud-1 Settlement Statement for the loan reflects a $9,150.98 payment to Whitehaven for "Hazard Insurance Premium". *(See Line 903 on HUd-1 attached hereto as Exhibit "1")*

**19.** Upon information and belief, this premium amount was either: 1) Excessive for the coverage purchased; and/or, 2) Misapplied or not applied in its entirety to the account of the Plaintiffs. Plaintiffs made thorough attempts through their undersigned counsel to ascertain which event occurred prior to the filing of this Complaint. Neither Crane nor Whitehaven responded to Plaintiffs' requests for clarification.

**20.** Defendant First American provided Plaintiffs with various pre-closing disclosures prior to the closing of the loan. One such disclosure was the Good Faith Estimate (hereinafter referred to as the "GFE") dated April 19, 2007. *(See GFE attached hereto at Exhibit "2")*

**21.** Plaintiffs allege that either certain costs were grossly and recklessly underestimated; or, certain funds belonging to Plaintiffs were misapplied or converted by one or more of the named Defendants at closing.

**22.** Those costs at issue on the GFE (Exhibit "2") include, but may not be limited to:

    a. $1,500.00 for Hazard Insurance Premium *(see line 903 on Exhibit "2", compared to line 903 of Exhibit "1")*;

    b. $250.00 for Hazard Insurances Reserves for two payments @ $125.00 month *(see line 1001 on Exhibit "2")*;

    c. $750.00 for county property tax reserves for six payments @ $125.00 per month *(see line 1004 on Exhibit "2", compared to 1004 on Exhibit "1")*;

3

       d.       $275.06 for Mortgage Insurance noted within the Transaction Summary of Exhibit "2". Compare to Line 1002 of Exhibit "1"; and,

       e.       The reported total of closing costs and prepaid items estimated as approximately $11,100.00 on the GFE compared to the actual costs of $18,504.68 reported at lines 1400 and 103 of the HUD-1 *(See Exhibits "1" and "2" attached hereto)*.

**23.** Plaintiffs contend that they made timely payments to Countrywide each month on the beach property loan, in the full amount invoiced including costs to properly maintain an escrow account for the payment of taxes and insurance.

**24.** In or around early September 2007, Plaintiffs received a letter from Countrywide which in part, alleged that Countrywide had not been notified that the beach property was protected by flood insurance. *(See August 26, 2007 letter from Countrywide attached hereto as Exhibit "3")*

**25.** Immediately upon receipt of the letter, John Mayhall contacted Whitehaven. Mr. Mayhall was assured that all necessary coverage was in place and that they, Whitehall, would provide evidence of coverage to Countrywide.

**26.** In or around late September 2007, the Plaintiffs received a "Second Notice" letter of the same nature from Countrywide. *(See September 23, 2007 letter from Countrywide attached hereto as Exhibit "4")*

**27.** Immediately upon receipt of this "Second Notice" letter, Mr. Mayhall again contacted Whitehaven. The representative of Whitehaven again assured Mr. Mayhall that they had procured all of the coverages necessary and that they had previously provided Countrywide with evidence of that coverage on at least two separate occasions. Whitehaven agreed to again submit the proof of insurance to Countrywide.

**28.** In mid to late October 2007, the Plaintiffs received another letter from Countrywide informing them that they, Countrywide, had forced placed flood insurance on the

beach property ay an annual cost of $9,053.61.  *(See "Notice of Placement" letter at Exhibit "5" attached)*

**29.** Upon information and belief, Countrywide purchased a $250,000 flood policy through Lexington Insurance Company, with an effective date of August 23, 2007.  *(See declarations page attached hereto at Exhibit "6")*

**30.** Mr. Mayhall again, immediately contacted Whitehaven and was again assured that they had procured all necessary coverages on the beach property and that they had repeatedly provided proof of said coverages to Countrywide.

**31.** Although Plaintiffs contend that they made timely monthly payments pursuant to the terms of the loan as closed, on or about July 21, 2008, Plaintiffs received a letter from Countrywide stating the beach property loan was in "serious default" and that the amount required to "reinstate the loan" was $10,566.87.  *(See Countrywide's Default Letter dated July 17, 2008 attached hereto at Exhibit "9")*

**32.** On August 7, 2008, the undersigned sent by U.S. Mail, certified, return receipt requested; a Qualified Written Request (QWR) to Countrywide pursuant to 12 U.S.C. §2605(e).  The undersigned identified himself as the attorney and agent for the Mayhall's in the QWR.  The letter was signed for on August 11, 2008.  *(See QWR and green card attached hereto at Exhibit "10")*

**33.** On or about August 23, 2008 and within the allotted twenty-days under RESPA, the undersigned received an acknowledgement of receipt of the QWR from Countrywide.  The acknowledgement also purported to add an additional requirement to RESPA that a response to the QWR would require an executed authorization from the Plaintiffs.  *(See August 19, 2008 letter from Countrywide attached hereto at Exhibit "11")*

**34.** In early October 2008, the undersigned received two additional "acknowledgements" of their receipt of the QWR from Countrywide.  *(See October 2, 2008 and October 3, 2008 letters from Countrywide attached hereto at Exhibit "12")*

**35.** On October 28, 2008, the undersigned received some of the information requested in the QWR received by Countrywide on August 11, 2008.  Countrywide's response was untimely and violated RESPA.

**36.** During the period between July 2008 and December 2008, Countrywide continued to make collection calls and send past due notices to the Plaintiffs for amounts they deny they owe. During the same period, the Plaintiffs repeatedly telephoned Countrywide and spoke with numerous collectors and/or customer service agents for Countrywide in attempts to get clarification of what was happening to their loan and payments. Although on most occasions the agents that the Plaintiffs spoke with were rude, uniformed and/or clearly untrained and ill-equipped to speak about the loan issues; on at least one occasion (in October or November 2008) an agent admitted that there had been an error and that he "would see to it that it was fixed" and that the Plaintiffs would receive a refund for the excess money they had been paying to avoid foreclosure. This never happened.

## COUNT I

## NEGLIGENCE

**37.** Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

**38.** Defendant Countrywide was negligent in the servicing of Plaintiffs' residential mortgage loan. Their conduct fell below the standard of care for mortgage servicers and as a direct and proximate result Plaintiffs were damaged as set out below. To the extent Defendant's conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

**39.** Defendant Crane Title was negligent in the closing of Plaintiffs' residential mortgage loan. Their conduct fell below the standard of care for closing agents and as a direct and proximate result Plaintiffs were damaged as set out below. To the extent Crane Title's conduct was reckless or wanton, Plaintiffs seek punitive damages.

**40.** Defendant Whitehaven was negligent in the procurement of all necessary insurance coverages required for Plaintiffs' residential mortgage loan. Their conduct fell below the standard of care for insurance agents and brokers and as a direct and proximate result Plaintiffs were damaged as set out below. To the extent Whitehaven's conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

**41.** Defendant First American was negligent in the origination and closing of Plaintiffs' residential mortgage loan. Their conduct fell below the standard of care for mortgage lenders and as a direct and proximate result Plaintiffs were damaged as set out below. To the extent First American's conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

**42.** Although under no duty to so, all named Defendants respectively, undertook to originate, process, close, fund, service and/or procure necessary insurance for a mortgage loan for Plaintiffs. They did so negligently or recklessly and as a proximate result Plaintiffs were injured as set forth below. To the extent the Defendants' conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

**43.** All Defendants breached their legal, contractual and/or assumed duty of reasonable care to the Plaintiffs. As a proximate result Plaintiffs were injured as set forth below. To the extent the Defendants' conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs demand judgment from each Defendant, jointly and severally, for compensatory and punitive (if the evidence warrants) damages in an amount to be awarded by a jury.

## COUNT II

## NEGLIGENT SUPERVISION

**44.** Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

**45.** All Defendants negligently trained and/or supervised their agents and employees. The Defendants failed to promulgate, implement, communicate and enforce rules, systems and/or procedures which, if reasonable, would have prevented the wrongful conduct afore-stated. Their conduct fell below the standard of care for mortgage lenders, brokers, closers, servicers and insurance agents; and as a direct and proximate result Plaintiffs were damaged as set out below. To the extent the wrongful conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs demand judgment from each Defendant, jointly and severally, for compensatory and punitive (if the evidence warrants) damages in an amount to be awarded by a jury.

## COUNT III

## UNJUST ENRICHMENT

46. Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

47. Defendant Countrywide engaged in unconscionable, harassing, deceptive and predatory practices in order to induce Plaintiffs to pay large sums of money toward the mortgage loan made the basis of this lawsuit. The transactions, including the payment of the force placed insurance and grossly inflated escrow account payments unjustly enriched the Defendant and harmed the Plaintiffs.

48. Defendant Crane Title engaged in unconscionable and deceptive practices in order to charge, and perhaps retain, approximately $5,000 from Plaintiffs' loan funds which they allege to have paid to Whitehaven for hazard insurance. The transaction unjustly enriched the Defendant and harmed the Plaintiffs.

49. Defendant Whitehaven engaged in unconscionable and deceptive practices in order to charge, and perhaps retain, approximately $14,000 from Plaintiffs' loan funds for hazard insurance since May 15, 2007. The transaction unjustly enriched the Defendant and harmed the Plaintiffs.

50. As a proximate result of all Defendants' wrongful conduct Plaintiffs were damaged as set forth below and are entitled to equitable relief.

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs demand judgment from all Defendants, jointly and severally, for compensatory and punitive damages in an amount to be awarded by a jury.

## COUNT IV
## FRAUD

51. Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

**52.** Defendant First American Bank intentionally, recklessly or through mistake; concealed, suppressed or misrepresented the cost of the hazard insurance that would be charged to Plaintiffs' loan. The cost of the insurance was a material fact. The factual basis for this claim, including specific persons, times, and documents are set forth in the Factual Allegations paragraphs above and are supported by Exhibits "1" and "2" attached hereto.

**53.** Defendant Crane Title intentionally, recklessly or through mistake; concealed, suppressed or misrepresented the costs of the hazard insurance charged to Plaintiffs' loan. The factual basis for this claim, including specific persons, times, and documents are set forth in the Factual Allegations paragraphs above and are supported by Exhibits "1" and "2" attached hereto.

**54.** Defendant Whitehaven intentionally recklessly or through mistake; concealed the total amount of money they were paid for specified amounts and types of insurance coverage. Alternatively, Whitehaven intentionally, recklessly or through mistake, repeatedly told Plaintiffs the proper insurance had been procured when it had not. The factual basis for this claim, including specific persons, times, and documents are set forth in the Factual Allegations paragraphs above.

**55.** Defendant Countrywide intentionally, recklessly or through mistake; failed to report to Plaintiffs the true status of the insurance coverage relative to the subject loan. Despite repeated telephone calls and a Qualified Written Request, Countrywide repeatedly failed to report the over payment of premiums by Plaintiffs and/or confirm the type of insurance coverage Plaintiffs had in place and/or needed to have in place.

**56.** Defendant Countrywide intentionally, recklessly or through mistake; inaccurately maintained the payment history and escrow account on Plaintiffs' loan and as a result, falsely reported to Plaintiffs that they were delinquent when they were not; pursued rigorous collection activities against Plaintiffs; threatened foreclosure of the loan; and collected excessive payment amounts from Plaintiffs based upon the false representations.

**57.** Plaintiffs justifiably and reasonably relied upon each Defendants' intentional, reckless or mistaken representations of material facts to their detriment. Plaintiffs' detrimental reliance was demonstrated by multiple payments to Countrywide in amounts much higher than Countrywide was due to avoid the possibility of derogatory remarks being placed on their credit file and to avoid threatened foreclosure of the subject loan. Plaintiffs' detrimental reliance was

also demonstrated by the payment of over $9,100.00 for insurance premiums from their loan funds at closing.

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs demand judgment from all Defendants for compensatory and punitive damages in an amount to be awarded by a jury.

### COUNT V

### NEGLIGENCE PER SE

**58.** Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

**59.** Defendant Countrywide failed to comply with RESPA QWR disclosure requirements mandated by the Real Estate Settlement Procedures Act. Their conduct violated said regulations specifically promulgated for the benefit of the Plaintiffs and other similarly situated citizens, including but not limited to 12 U. S. C. §2605. Their conduct amounts to Negligence Per Se through which Plaintiffs were proximately injured.

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant Countrywide for compensatory damages

### COUNT VI

### VIOLATIONS OF 12 U.S.C §2605 & §2609

**60.** Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

**61.** Defendant Countrywide, as detailed within the foregoing Counts and Paragraphs, violated *at least* the following provisions of RESPA:

    f. 12 U.S.C §2605(e)(2) – Failure to provide response to a properly submitted QWR within 60-days of receipt;

    g. 12 U.S.C. §2605(e)(3) – Failure to protect consumers' credit rating during the pendency period of a properly filed QWR; and,

    h. 12 U.S.C. §2609(a)(2) – Over charging a consumer's escrow account.

**62.**    As the result of said violations, Plaintiffs have suffered economic loss, incurred attorney fees, suffered harassing phone calls, received erroneous collection letters and, suffered embarrassment, humiliation and defamation of their credit.

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant Countrywide for actual damages, statutory damages of $1,000 for the pattern and practice of wrongdoing by Countrywide to these Plaintiffs and consumers nationwide; the costs of this action; and, attorney fees at the rate of $350.00 hour for the investigation, preparation and trial of this matter.

## COUNT VII

## CONVERSION

**63.**    Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

**64.**    One or more of the named Defendants improperly charged Plaintiffs' loan with approximately $9,100.00 in insurance premiums at closing, then failed to give credit for said payment during the servicing of the loan.  Plaintiffs contend that at least $5,000.00 of said specified and identifiable funds was an overcharge that has been wrongfully retained and converted from Plaintiffs.

**65.**    Because the best information about the payment, receipt and application of the funds alleged to have been converted is within the control of the Defendants and not Plaintiffs, all Defendants are presently named in this Count pending discovery.

**66.**    Defendant Countrywide unnecessarily force placed certain insurance coverage on Plaintiffs' loan.  Upon information and belief, said coverage was placed with a carrier captive to Countrywide at an exorbitant cost to Plaintiffs and excessive profit to Countrywide.  In doing so, Countrywide converted specified funds of Plaintiffs to their own use.

**67.**    As a direct and proximate result, Plaintiffs have been damaged as set out below.

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs demand judgment against Defendant Countrywide compensatory and punitive damages in an amount to be determined by the Court.

## COUNT VIII

## DAMAGES

**68.** Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

**69.** All Defendants wrongful conduct as stated above combined and concurred to proximately injure Plaintiffs as follows:

    a. Plaintiffs suffered and will continue to suffer substantial economic loss and expense; and

    b. Plaintiffs suffered and will continue to suffer humiliation, embarrassment, mental anguish, defamation of credit, and extreme emotional distress.

**70.** To the extent Defendants' wrongful conduct was reckless; intentional; wanton unconscionable; part of a pattern and practice to misinform or deceive; part of a pattern and practice of "bait and switch"; and/or predatory, Plaintiffs are entitled to and demand punitive damages.

**71.** To the extent Defendants' wrongful conduct, if allowed to continue would be unjust and inequitable, Plaintiffs are entitled to equitable relief.

## PRAYER FOR RELIEF

**72.** Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

**73.** Plaintiffs demand judgment as set out below from the Defendants, Jointly and severally:

    a. Punitive damages in an amount to be awarded by the Court;

    b. Compensatory damages in an amount to be awarded by the Court;

    c. Statutory damages pursuant Plaintiffs' RESPA's claims;

    d. Equitable relief as follows:

      i.    Refund of all finance charges, principle and fees paid to date on loan at issue;

      ii.    Release of Defendant's security interest, if any, in the subject property;

      iii.    Rescission of the loan/mortgage;

      iv.    Costs of this proceeding;

      v.    Attorney's fees; and,

      vi.    Other relief as the court deems necessary to do equity.

Respectfully Submitted,

_____
ROBERT E. KIRBY, JR. (KIR013)
Attorney for Plaintiffs


*Of Counsel:*
The Kirby Law Firm
4000 Eagle Point Corporate Drive
Birmingham, Alabama 35242
(205) 281-8587 Direct Dial
(205) 254-0975  Office
(205) 314-5799  Fax
bkirby@bkirbylaw.com


**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL, RETURN RECEIPT, AS FOLLOWS:**

**COUNTRYWIDE HOME LOANS, INC.**
c/o
The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

**CRANE TITLE, INC.**
c/o
Andrew J. Crane

2607 Dauphin Street, Suite C
Mobile, Alabama 36606

**WHITEHAVEN INSURANCE GROUP, INC.**
c/o
Debra D. Gibson
2201 Oyster Bay Lane
Gulf Shores, Alabama 36542

**FIRST AMERICAN BANK**
c/o
James R. Thompson, III
1927 First Avenue North
Birmingham, Alabama 35203